**Northern District of GA**
**Atlanta Division**
**1:20-cv-04803-CAP**

**EXHIBIT A:**
**DR. SILCOX REPORT**

# PEACHTREE ORTHOPEDICS

July 11, 2021


Jessica A. Wiles, Paralegal
Gray, Rust, St. Amand, Moffett and Brieske, LLP
Attorney at Law
950 Paces Ferry Road, NE
Suite 1700
Atlanta, GA 30326

Re:  Thomas Harvey versus The Kroger Company

Dear Ms. Wiles:

I am writing as a follow up to the review of the Thomas Harvey versus Kroger Company lawsuit medical records.  In forming my opinions regarding this case, I have reviewed the incident report, images of the banana on the floor, as well as video clip of the incident.  I have also been able to look at deposition transcript of Thomas Harvey.  I have read through the medical records of CORE Chiropractic, Metro Atlanta Ambulance, WellStar Paulding Hospital, Spilker Family Medicine, WellStar Medical Group Neurology, WellStar Paulding Hospital, WellStar Paulding Imaging, Back In Line Chiropractic, Resurgens Orthopaedics films or x-ray reports, as well as Resurgens centralized x-ray reports, Resurgens Orthopaedics notes, WellStar Cobb Hospital x-rays notes, Wellstar Cobb Hospital and Pain Solutions Treatment Centers.   I have used all of these records to formulate my opinions regarding this case.

Additionally, I have reviewed numerous x-ray studies of the cervical, thoracic and lumbar spine regarding Mr. Harvey and additionally, I have reviewed x-ray films of the extremities and shoulder.  These x-rays again were all on DVDs and I have reviewed all of them in their entirety.  I will not list all of the sources, although I would be glad to do so if asked.

The incident report from Kroger dated 11/10/2015 documented that Mr. Harvey had been a customer at Kroger and had slipped and fell on a banana peel.  Furthermore, the incident report documents that he had a bruised hip that was greatly due to a concealed weapon.  The police department was dispatched in order to sort through this issue.  Nonetheless, Mr. Harvey was transported by MetroAtlanta Ambulance to the Wellstar Paulding Hospital.  The MetroAtlanta Ambulance recorded that the patient had a surgical repair of an abdominal aortic aneurysm four weeks earlier, and thus the report suggested some concern regarding that surgical repair.  This ambulance report also documented there has been no loss of consciousness. I reviewed the video of this Mr. Harvey's fall, and while he cannot be completely seen or fully evaluated in the bottom left-hand corner of the video, one can see him fall to the ground. As to how he hit the ground, it is unclear.  It is clear that he is able to stand up with help.

After arriving at WellStar Paulding Hospital, Mr. Harvey was evaluated with a CT scan of the cervical spine that showed he was status post cervical corpectomy, and it was noted that there was moderate spondylosis at C3-4 and at C6-7.  Otherwise, the cervical spinal fusion was well healed and without signs of acute injury.  They also evaluated: the thoracic spine with AP and lateral views, which showed

― Proud Partners ―



**PEACHTREE ORTHOPEDICS**

,

**7/11/2021**
**PAGE 2**

spondylosis; two views of the right hip and femur, which showed arteriosclerosis, but no other abnormalities. X-rays obtained at that time also included AP and lateral views of the lumbar spine, which showed Mr. Harvey to be status post aortoiliac bypass, and there was spondylosis noted at L2-3, L3-4 and L4-5.

Mr. Harvey was released from the hospital, and he was seen and treated by Dr. Said Elshihabi on 11/21/2015 and it was noted the patient had fallen and hit their head and neck. It furthermore stated the patient had a previous corpectomy in March of 2014. Dr. Elshihabi had recommended obtaining MRIs of the lumbar and cervical spine.

Mister Harvey subsequently followed up with WellStar Medical Group and/or Derek Baker, PA on 11/17/2015. The history obtained at that time suggested that Mr. Harvey had fallen, hitting his head and neck. The complaint at this visit was that of neck and lower back pain, but there were no complaints of radicular pain or weakness. He was recommended to get an MRI at this visit and otherwise he was given a Medrol Dosepak. He then underwent MRIs of the lumbar spine and the cervical spine on 11/23/2015. My reading of this MRI of the lumbar spine showed degenerative disk disease at L3-4, L4-5 and L5-S1. There was noted to be facet hypertrophy on the left greater than the right at L5-S1. There was noted to be an annular tear and bulge on the right at L5-S1 with no compression of any nerve roots. Some mild foraminal stenosis was noted at L4-5, and to a lesser degree L3-4. Review of the MRI of the cervical spine of the same date showed the patient to be status post C4 through C6 fusion with corpectomy of C5 with residual foraminal stenosis on the left at C5-6 and spondylosis was noted at C3-4 and C6-7. The patient then followed up with Resurgens Orthopaedics, and more specifically, Ali Mortazavi, DO. Mr. Harvey was seen on 01/08/2016. A pain diagram from that visit showed documentation of lower back pain and neck pain, but there were no drawings of any leg pain, while there was some drawing of some left arm pain. Dr. Mortazavi noted the patient had "severe back pain," which radiates to bilateral lower extremities. However, again, the patient did not document leg pain at that time. The neurological examination did not find any particular abnormalities. The patient was treated conservatively and returned on 01/29/2016 and was noted to complain of severe pain. He was taking four Percocet per day. However, Mr. Harvey was being treated by Pain Solutions just prior to his fall. Mr. Harvey had been seen from 07/08/2014 until 10/29/2015 at Pain Solutions for 23 visits for treatment of chronic pain, and he was then seen on 12/04/2015 for a first visit following his fall at Kroger. The pain diagram from Pain Solutions on 12/04/2015 showed no evidence of leg pain, only back pain. Regardless, the patient was being followed by Dr. Mortazavi at this time, and on the 01/29/2016 visit it was recorded that the patient had severe pain and was taking four Percocet per day. At this office visit, Dr. Mortazavi recommended the patient undergo L4-5 laminectomy. A consent at that time denoted that the procedure was to be a L4 to S1 laminectomy. The patient returned on 02/19/2016, and Dr. Mortazavi recommended an L4-5 laminectomy with Coflex. A consent on 02/15/2016 from Dr. Mortazavi's practice listed only a laminectomy of L4-5 and L5-S1.

Surgery was undertaken on 02/29/2016, and the operative note shows the patient underwent L4 through S1 laminectomies, as well as a posterolateral fusion without instrumentation. The reasoning for this

— Proud Partners —

    



,

7/11/2021
PAGE 3

fusion was "post-laminectomy instability." It is important to note that prior to the surgery, there was no indication of any type of instability, as there was no spondylolisthesis, scoliosis, or retrolisthesis. As such, as to how Dr. Mortazavi derived a diagnosis of post-laminectomy instability is impossible to understand. More specifically, the establishment of instability had not been made prior to surgery and intraoperatively reading the note, as well as looking at postoperative films, there are no findings to suggest that any instability was created through the laminectomy. The patient followed up on 03/04/2016 for the first postoperative visit and no complications were recorded. Subsequently, the patient returned for follow ups until 11/11/2016 when Dr. Mortazavi recommended the patient continue follow up with Pain Management.

Throughout treatment with Dr. Mortazavi, there was no discussion regarding the cervical spine requiring any significant treatment.

Notes show that Mr. Harvey had been treated at Alliance Spine, Pain Solutions after his lumbar surgery. Treatment from this group had included radiofrequency ablations of L3 through S1, and this was documented on 07/19/2017. It is surprising that radiofrequency ablations were performed from L3-4 and L4-5 since the patient had undergone a previous fusion of these two levels. There would be no reason to perform radiofrequency ablation at L3-4 or L4-5 as there are no facet joints to the ablated. As such, this would appear to be at best a sham operation. Obviously, degenerative facet changes at L5-S1 could be benefited from radiofrequency ablation, but not L3-4 and L4-5.

Also, of note is the fact that Mr. Harvey had had chronic neck, thoracic and lower back pain as documented from his visits with CORE Chiropractic from 09/03/2010 until 06/22/2012. Obviously, he had then been worked up and treated for his cervical spine, and this treatment had been for cervical spondylosis and what appears to be ossification of the posterior longitudinal ligament as seen in CT scan from 01/03/2014.

Having reviewed these numerous records, it is my opinion that Mr. Harvey did have a fall at Kroger, and this is well documented, not only in the medical record, but also by video surveillance. The fall appears to have aggravated his pre-existing conditions of neck and lower back pain. The subsequent workup with MRI's shows no acute changes to the cervical or lumbar spine, and the MRI's demonstrated chronic pre-existing conditions. However, Dr. Mortazavi felt that the patient suffered from spinal stenosis. It is my opinion to a reasonable degree of medical certainty that the patient had mild foraminal stenosis, but no significant central or lateral recess stenosis. The patient did not any significant conservative treatment such as epidural steroid injection or physical therapy in an attempt to help relieve Mr. Harvey's symptoms. Typically, conservative treatment is administered before undergoing surgical intervention and certainly even more so when there are minimal findings of spinal stenosis and no findings of acute disk herniation. It is my opinion that surgery in the way of laminectomy was not medically necessary to improve Mr. Harvey's lumbar condition. Furthermore, the fusion of the lumbar spine was not necessary, as there was no documentation of instability pre-operatively or intra-operatively, which would be the primary reason for a fusion.

    

![Peachtree Orthopedics]

,

**7/11/2021**
**PAGE 4**

My other opinion is that the cervical spine condition was aggravated by the fall, but this condition has fully resolved to its pre-injury status. No further treatment is needed for the cervical spine, and treatment of the cervical spine has not been needed for over five years.

With regards to Mr. Harvey's needs for pain management, it is my opinion that his need for pain management is due to his preexisting chronic pain syndrome that was being treated by Pain Solutions immediately before the fall. I believe he may need continued pain management, but it is my opinion to a reasonable degree of medical certainty that the need for pain management is not due to the 11/10/2015 fall, but rather due to the chronic ongoing neck and lower back, as well as thoracic back pain that he has been treated for. Long-term medical needs for his pain management may be appropriate, but again it is my opinion to a reasonable degree of medical certainty the need for long-term medical care is not due to the 11/10/2015 fall at Kroger.

I exercise the right to expand upon my opinions if provided with new or different medical information. Please do not hesitate to contact me if you have more questions.

Respectfully,

D. Hal Silcox, MD

DHS/df/kaqa
RPT#:237166469

