## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| THOMAS HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO. 1:20-cv-04803 - CAP |
| | ) | |
| THE KROGER CO., | ) | Pre-Trial Conference Requested |
| | ) | |
| Defendant. | ) | *Removed from Cobb State Court* |
| | ) | *Civil Action Number: 20-A-3874* |

## CONSOLIDATED PRETRIAL ORDER

1.

There are no motions or other matters pending for consideration by the court except as noted:

**By Plaintiff:**

**Plaintiff intends to file motions *in limine* in connection herewith and reserves the right to file additional motions *in limine*, should additional issues arise, as provided under the provisions of the Federal Rules of Civil Procedure, the Northern District Local Rules, and deadlines(s) imposed by the Court.**

**By Defendant: Defendant reserves the right to file motions *in limine* and any additional motions as provided under the provisions of the Federal Rules of Civil Procedure, the Northern District local rules, and deadline(s) imposed by the Court.**

**Defendant requests a pre-trial conference and request that the Court hear motions in limine at that conference.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**By Plaintiff:**

**All discovery has been completed. Plaintiff is in the process of scheduling depositions for preservation of evidence for use at trial. In addition to the deposition of Dr. Ali Mortazavi, scheduled for July 21, 2022, Plaintiff's counsel is coordinating with Defendant's counsel to schedule any additional medical witnesses. Said depositions will not delay Plaintiff's readiness for trial.**

**By Defendant:  Defendant may schedule the deposition of its expert, Dr. Silcox, for preservation of evidence and for use at trial. Defendant will be able to make that determination once a trial date is selected, so arrangements can be made with Dr. Silcox's schedule as he is a practicing physician.**

**Defendant reserves the right to name additional rebuttal experts to discuss and/or address the findings and/or opinions of Plaintiff's proffered experts, should the Court allow said experts to testify in the case.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The parties are properly named.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**There is no question as to the jurisdiction of the court. Jurisdiction for all claims is based upon diversity of citizenship under United States Code Title 28, section 1332. This case was properly removed pursuant to 28 U.S.C. § 1441 from the State Court of Cobb County.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**PLAINTIFF:**

Jeffrey P. Yashinsky, Esq.
**THE YASHINSKY LAW GROUP, LLC**
Georgia Bar No. 780370
295 West Crossville Road
Building 600, Suite 610
Roswell, GA 30075
(770) 691-8103 (Office)
(470) 397-0471 (Facsimile)
Jeff@yashinskylaw.com

**DEFENDANT:**

Matthew G. Moffett, Esq.
Sarah Raquel L. Lisle, Esq.
**Gray, Rust, St. Amand, Moffett & Brieske, LLP**
950 East Paces Ferry Road
1700 Atlanta Plaza
Atlanta, GA 30326
(404) 870-7386 (phone)
mmoffett@grsmb.com
slisle@grsmb.com

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**By Plaintiff:**

**Plaintiff is not aware of any reason he should not be permitted to open and close arguments to the jury.**

**By Defendant:**

**No objection, but Defendant notes that Plaintiff's counsel is restricted to make a final rebuttal closing arguments solely to address arguments raised by Defendant.**

7.

The captioned case shall be tried to a jury.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**By Plaintiff:**

**The issues in this case do not require bifurcation. Plaintiff's claims involve injuries from a fall at Defendant's grocery store and the issues of negligence, causation and damages do not warrant bifurcation.**

**By Defendant:**

**Defendant request that the trial to a jury be bifurcated with respect to the issue of liability (if any) for attorney's fees/expenses of litigation to**

**be included in the first phase along with liability for and the amount of compensatory damages, and to have the determination of how much to award in fees/expenses (if any) in the second phase.  Defendant notes that this is not applicable to an O.C.G.A.  §13-6-11 claim for attorney fees, which this Court has already ruled Plaintiff is not entitled to. See doc 61.**

9.

 Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

**By Plaintiff:**          **See Attachment A-1.**

**By Defendant:**          **See Attachment A.**

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any.  Counsel may be permitted to ask follow-up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

**By Defendant:**

**Defendant objects to questions 10 and 11, as there is no claim regarding improper hiring, training, or supervision and such questions on the matter is therefore misleading and confusing as it implies there is such an issue. Defendant objects to questions 12 and 13, as they improperly imply that floor maintenance is for "injury prevention", which is a misstatement of the law as it implies a grocery store is responsible for injuries and thus these questions are misleading and confusing. Defendant objects to question 36 as the description of medical issues as stated can be confusing to a jury.**

State any objections to defendant's voir dire questions:

**By Plaintiff:**

**Plaintiff objects to Defendant's proposed Voir Dire question No. 5 on the basis that it implies that "accidents happen" is a legal defense in a personal injury claim. Phrasing non liability in this manner is misleading, unnecessary, and prejudicial. Plaintiff also objects to Defendant's Voir Dire questions Nos. 8 and 10 on the grounds that the wording implies a potential punitive element involved in this case, and in personal injury cases generally, which is not proper for a potential juror to consider. Lastly, Plaintiff objects to Defendant's Voir Dire question No. 39 as it encourages potential jurors to form opinions about the case before the evidence is presented.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for

additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

**By Plaintiff:  None.**

**By Defendant: None.**

<div align="center">13.</div>

State whether there is any pending related litigation.  Describe briefly, including style and civil action number.

**The parties agree there is no pending related litigation.**

<div align="center">14.</div>

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct  factual  summary of plaintiff's  cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

**By Plaintiff:  Please see Attachment C.**

<div align="center">15.</div>

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**By Defendant: Please see attachment D.**

<div align="center">16.</div>

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non- cooperating counsel.

**Please see Attachment E.**

<div align="center">17.</div>

The legal issues to be tried are as follows:

**By Plaintiff:**

**Premises liability, Negligence, proximate cause, and damages.**

**By Defendant:**

**Whether Plaintiff was negligent.**

**Whether Defendant Kroger was negligent.**

**Causation.**

**Damages.**

<div align="center">18.</div>

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that

a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

**By Plaintiff:** **Please see Attachment F-1.**

**By Defendant:** **Please see Attachment F-2.**

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial. Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to

examine exhibits that are or should have been listed.

**By Plaintiff:**

**Plaintiff's typed list of all documentary and physical evidence that may be tendered at trial is set forth in Attachment G-1. Plaintiff's objections to Defendant's proposed evidence are set forth in Attachment G-2A.**

**By Defendant:**

**See Attachment "G-2" (Defendant's Exhibit List).**

**Defendant's objections to Plaintiff's exhibit list will be set forth in Defendant's Attachment "G-1A."   Defendant further proposes submitting objections to exhibits, including objections as to authenticity, seven (7) days prior to trial unless otherwise ordered by the Court.**

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**By Plaintiff:**

**Plaintiff intends to present the video deposition of Dr. Ali Mortazavi, scheduled on July 21, 2022, for the preservation of evidence and by agreement of counsel. Plaintiff is also in the process of scheduling the evidentiary deposition of one additional treating doctor and is working with opposing counsel to coordinate same. Plaintiff also intends to introduce the video deposition of Defendant's designated 30B6 representative Adam Bowman, deposed on June 20, 2019. Plaintiff reserves the right to designate portions of**

depositions of any witness deemed unavailable for trial and/or for purposes of impeachment. All colloquy between counsel will be redacted prior to trial.

### By Defendant:

Defendant anticipates that it will rely upon the following depositions given for the purposes of preservation of evidence and for use at trial:

1.      Hal Silcox, M.D.;

2.      Any persons or personnel, including records custodians, affiliated with the entities listed in Paragraph 19 (and accompanying attachments) of this Pretrial Order; and

3.      Any witness not available as contemplated by Fed. R. Civ. P. 32(a)(4).

Defendant objects to the disclosure and/or use of depositions for those witnesses who were not previously disclosed during the course of discovery and/or have not been declared unavailable by the Court.

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

In lieu of the foregoing, Plaintiff requests that counsel for the parties be Ordered to present the Court with their respective objections to depositions fourteen (14) days prior to trial, so that any video testimony can be edited and redacted prior to trial.

**Defendant has no objection to Plaintiff's request that objections be made**

**14 days prior to the first day of trial.**

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**By Plaintiff:**

**See attachment H-1. Plaintiff requests the right to submit additional**

**motions *in limine* prior to trial.**

**By Defendant:**

**Defendant reserves the right to file a trial brief and Motions in Limine**

**prior to the commencement of the trial of this case on the deadlines established**

**by this Court at the Pre-Trial Conference.**

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are

directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

<div align="center">23.</div>

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**<div align="center">Please see Attachment I-1 for Plaintiff, and I-2 for Defendant.</div>**

<div align="center">24.</div>

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**<u>By Plaintiff:</u>**

**Plaintiff respectfully requests forty-five (45) minutes to conduct closing arguments in this case. The liability issues involve evidence surrounding Defendant's corporate guidelines and its store's specific practices, or lack thereof, and the duties to its employees. In addition, Plaintiff's damages involve lengthy medical treatment, extensive bills and issues including surgery, preexisting medical conditions, aggravation, and permanency, all for the jury's consideration.**

**<u>By Defendant:</u>**

**Defendant consents to one-half hour for each side.**

<div align="center">25.</div>

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

**N/A**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties conferred telephonically on May 13th, 2021and again on June 30, 2021, to discuss in good faith the possibility of settlement of this case. The court has not discussed settlement of this case with counsel. It appears at this time that there is:
( ) A good possibility of settlement. ( ) Some possibility of settlement.
(X) Little possibility of settlement. ( ) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**<u>By Plaintiff:</u>**

**Plaintiff requests the Court's consideration for counsel's Leave of Absence filed on April 18, 2022. In addition, Plaintiff underwent open heart surgery in May and was discharged from the hospital on June 3, 2022. Plaintiff does not anticipate any need to delay these proceedings, however he is scheduled for an appointment with his cardiologist, at which time he hopes to receive clearance to resume all normal activities, including driving. While he is hopeful his post operation restrictions will be lifted, Plaintiff requests consideration of a continuance should his doctor advise him of same.**

**<u>By Defendant:</u>**

**Defendant requests that filed Leave of Absences be considered prior to placing the matter on a trial calendar, as well the scheduling of any requested evidentiary depositions.**

28.

The plaintiff estimates that it will require **2** days to present his evidence. The defendant estimates that it will require **2-3** to present its evidence. It is Plaintiff's estimation that the total trial time expected is **4-5** days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case ( X ) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

SO ORDERED this ___ day of _____, 2022.

_____
THE HONORABLE CHARLES A. PANEL, Jr.
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

Respectfully submitted this 1st day of July, 2022.


/s/Jeffrey P. Yashinsky (signed with
express permission by MGM) _
Jeffrey P. Yashinsky, Esq.
Georgia Bar No.: 780370
Kurt Kastorf
Georgia Bar No.: 315315
**THE YASHINSKY LAW
GROUP**
295 West Crossville Road
Building 600, Suite 610
Roswell, GA 30075
770-691-8100
Jeff@yashinskylaw.com
*Attorneys for Plaintiff*

/s/Matthew G. Moffett
Matthew G. Moffett, Esq.
Georgia Bar No.: 515323
Sarah Raquel L. Lisle
Georgia State Bar No.: 412593
**GRAY, RUST, ST. AMAND,
MOFFETT & BRIESKE, L.L.P.**
950 East Paces Ferry Road, N.E.
Suite 1700 – Salesforce Tower
Atlanta
Atlanta, GA 30326
Phone: (404) 870-7386
Fax: (404) 870-1033
E-mail:mmoffett@grsmb.com
 slisle@grsmb.com
*Attorneys for Defendant*

ATTACHMENT "A-1"

**PLAINTIFF'S PROPOSED VOIR DIRE REGARDING LEGAL QUALIFICATIONS TO SERVE**

1.  Are you a citizen of the United States?

2.  Are you over eighteen years of age?

3.  Do you have trouble reading, writing, speaking, or understanding the English language?

4.  Do you suffer from a mental or physical infirmity that would prevent you from serving on jury duty?

5.  Do you currently have a criminal charge either in State or Federal court pending against you that is punishable by imprisonment for more than one year?

6.  Have you ever been convicted of a crime either in State or Federal court that is punishable by imprisonment for more than one year?

7.  Do you know anyone in the courtroom today?

8.  Is any member of the panel related by blood or marriage to Thomas Harvey?

9.  Is any member of the panel employed by The Kroger Co.?

10. Is any member of the panel an officer, director or shareholder of The Kroger Co.?

11. Is any member of the panel employed by Sedgwick Claims Management Services, Inc.?

12. Is any member of the panel an officer, director or shareholder of Sedgwick Claims Management Services, Inc.?

13. Have you resided within Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton, or Rockdale County for at least one year?

14. Do you have any mental or physical problem which might impair your ability to render satisfactory jury service in this action?  Please explain.

15. Are you currently taking any medicine or drug that might impair your ability to render satisfactory jury service in this action?  Please explain.

16. Has anyone already formed an opinion about this case or any of the parties in this case?

17. Is there anyone who feels, for any reason at all, that they cannot be fair and impartial if selected as a juror in this case?

18. Have you ever served on a jury before? If so, please describe the nature and outcome of the case.

## ATTACHMENT "A-2"

## QUESTIONS REGARDING THE QUALIFICATIONS OF JURORS TO SERVE

### By Defendant:

Defendant requests this Court qualify the jurors with regard to the following areas of inquiry:

1.   Is anyone a citizen of another country or not a citizen of the United States?

2.   Is anyone under the age of 18?

3.   Over the last year, has anyone primarily lived in a county other than: Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton and Rockdale?

4.   Is anyone unable to read, write, and understand the English language?

5.   Is anyone unable to speak the English language?

6.   Does anyone suffer from a mental or physical condition that would make it extremely difficult, if not impossible, to serve on a jury?

7.   Has anyone been convicted of a felony crime (punishable by imprisonment for more than one year) for which their civil rights have not been legally restored?

8.   Does anyone currently face a felony charge punishable by imprisonment for more than one year?

## ATTACHMENT "B-1"

## PLAINTIFF'S GENERAL VOIR DIRE QUESTIONS

1. Does anyone know anyone else on the panel?

2. Does anyone know any people in the courtroom?

3. Has anyone here been a party to a lawsuit (not divorce) or has had a family member that has been a party to a lawsuit? Plaintiff or Defendant?

4. Has anyone here filed a claim for personal injury?

5. Has anyone had a personal injury claim filed against them?

6. Please raise your hand if you, a relative or close friend has had any type of legal training or ever worked in the legal field?

7. Please raise your hand if you, a relative or close friend has had any type of medical training or ever worked in the medical field?

8. Please raise your hand if you, a relative or close friend has ever been an insurance claims adjuster or had experience adjusting insurance claims?

9. Has anyone here ever owned or worked in a grocery store?

10. Has anyone here ever held a position of supervisor or manager for a business that invites customers onto its premises to sell goods?

11. Has anyone here ever been responsible for hiring, training or supervising other employees for a business that invited customers onto its property for the purpose of selling goods?

12. Has anyone here ever been responsible for maintaining the condition of a property for purposes associated with injury prevention?

13. Has anyone here taken part in advising, drafting, reviewing or approving safety guidelines, practices or policies relating to injury prevention for a business involved in the direct sale of goods?

14. Has anyone here ever had a negative experience with the legal system or serving on a jury?

15.    Is there anyone here who thinks the jury system doesn't work, or is broken?

16.    Who here has served as a jury foreperson before? Did you jury reach a verdict?

17.    Is there anyone here who believes there should be a limit on the size of a verdict a jury can award in a case involving someone who suffered injuries as the result of another party's negligence?

18.    Does anyone on this panel hold preconceived opinions about people who own firearms or possess a license to carry a firearm in public that would possibly impact your views on a party or a witness?

19.    Does anyone here hold strong beliefs about personal injury lawsuits or the people that pursue money damages for injuries they suffered?

20.    Does anyone here lean, even slightly, towards the belief that there are simply too many lawsuits?

21.    Does anyone here hold the belief that personal injury claims are frivolous unless proven otherwise? Has anyone already formed an opinion about the merits of this case?

22.    Has anyone here owned a business that was sued in connection with an injury claim?

23.    Who here has seen personal injury attorney advertisements? Do any of you hold a negative opinion about lawyers who handle personal injury cases?

24.    Under the law and based on the evidence, the jury will be asked to determine whether the Defendant is at fault for causing Plaintiff's injuries and, if so, it will be tasked to issue a verdict that represents all harms and losses proven. If the damages presented warrant a verdict in excess of $1 million dollars, is there anyone who would be hesitant to issue such an award simply because you hold the belief that damages in a personal injury claim should be limited, regardless of the evidence presented?

25.    How many of you would think about it – even slightly – whether it would be difficult to tell your friends, family, co-workers that you were on a jury that awarded over a million dollars in a case? Would you make Plaintiff show more than the law requires before issuing a large verdict?

26.    In civil trials, the burden of proof the plaintiff must meet is a preponderance of evidence, which means more likely than not.  If the evidence presented tips

the scales, even slightly in his favor, the preponderance of evidence is met. Does anyone have any concerns about this concept, or believe a plaintiff seeking money damages should a higher burden of proof?

27. There are certain damages allowed in personal injury cases. One element of damages is "pain and suffering." Does anyone here believe that if money damages won't erase what happened, or, make the pain go away, it shouldn't be awarded to compensate the injured person's loss?

28. Is anyone here familiar with Dr. Ali Mortazavi of Resurgens Orthopedics, one of Plaintiff's treating doctors, whose testimony may be presented in this case? Does anyone have any familiarity, or treated with, him or his practice?

29. Some witnesses may testify by video deposition. Does anyone believe that evidence presented by video testimony carries less weight than if the witness testifies in person?

30. Does anyone review medical or summarize medical records as part of your occupation?

31. Is there anyone who believes medical records are, without question, 100% accurate.

32. Is anyone on this panel currently treating for chronic pain in their neck, back or other specific body part?

33. Has anyone suffered an injury as the result of a traumatic incident, such as a fall or a motor vehicle accident, that required some type of surgery?

34. As it relates specifically to a fall, has anyone suffered an injury that required medical treatment, even if it did not lead to surgery?

35. Has anyone undergone low back surgery or have a close family member who has undergone low back surgery?

36. If you find the evidence shows that a fall exacerbated a prior medical condition, or hastened symptoms which were dormant, is there anyone who would have difficulty awarding damages for a physical condition that preexisted, but was made worse because of, a fall?

37. Does anyone have concerns about basing a verdict strictly on the evidence introduced at trial even if you have questions about matters not addressed during the case?

38.     If you are selected to sit on this jury, would you feel comfortable addressing a fellow juror during the deliberations process if you believed they were disregarding the instructions given to you by the Court?

## ATTACHMENT "B-2"
### Defendant's Voir Dire Questions

**Legal System**

1. Who has previously served on a jury?

   a. Was it a civil or criminal case?

   b. Were you the foreperson?

   c. What was the jury's verdict?

2. Who has filed a claim or lawsuit for money, or has a family member who has?

   a. Who was involved?

   b. What was your role, if any?

   c. Were you or the family member satisfied with the outcome of the case?

3. Who has thought about filing a lawsuit, but did not for some reason?

   a. Please explain why you ended up not filing a lawsuit.

4. Has anyone here been sued by someone else?

   a. What were the circumstances?

   b. Were you satisfied with the outcome?

5. Who agrees with the statement that "sometimes accidents happen?"

   a. Who disagrees and says, "accidents don't just happen, someone is always responsible?"

6. Outside of a lawsuit or jury service, who has had any other experiences with the court system?

7. In general, who agrees that people who are wrongfully injured are usually not compensated fairly?

8. After being harmed, some people want to be compensated for their loss. Other people not only want to be compensated for what they lost, but also want to punish those who caused the harm. Which group do you relate to more? In other words…

   a. Who feels that, in general, you would just want to be compensated for your losses if you were harmed?

     b. Who instead feels that being compensated is usually not enough, and that you would also want to punish those who caused you harm?

9. Who has any legal education, training, or experience?

**Kroger questions**

10. How many of you have ever had a really bad experience while shopping at a store? For example, maybe you had an accident and got hurt, or maybe a store manager offended you in some way.

11. Has anyone ever been involved in a lawsuit against Kroger?

12. Has anyone ever worked with or for Kroger?

13. Has anyone gotten into any dispute or had any significant problem or issue with Kroger? Was the problem resolved to your satisfaction?

14. How many of you choose not to shop at Kroger for any reason?

15. How many of you have strong, negative feelings about Kroger? For example, who thinks there are too many slips or trips or accidents at Kroger?

16. How many of you have some criticism of Kroger as a grocery store or business?

17. How many of you just doesn't like Kroger, for whatever reason?

**Civic Engagement/Social Justice/Victim Mentality**

18. Over the last few years, there have been many public rallies across a variety of issues. Has anyone here ever attended a political rally?

    a) Which rally/rallies did you attend?

19. Did you want to attend one of these rallies but ended up not doing so?

    a) Please explain which rally, and why you ended up not attending.

20. Has anyone here ever…

    a) Boycotted a product or company?

        i) If yes, which product or company?

    b) Left a negative comment on an internet news article?

        i) If yes, approximately how many times?

    c) Left a negative review for a company or product on a website, such as Yelp?

        i) If yes, approximately how many times?

    d) Left a negative comment on someone else's social media page?

        i) If yes, approximately how many times?

## COVID/Mask Wearing

21. Each person here likely has a different opinion on wearing masks indoors. Some individuals prefer to wear masks even when it is not required, while other individuals will only wear a mask when it is required. Who here would say they are more like the individuals who always wear a mask, even when it is not required?

22. Throughout this trial, you will be hearing testimony from various witnesses. Will your thoughts about a witness change depending on whether he or she is wearing a mask during their testimony?

    a) If yes, please explain.

23. Is anyone here uncomfortable about sitting so close to other jurors?

    a) Will it make you uncomfortable if the judge does not require jurors to wear masks during the proceedings?

    b) Will your uncomfortableness affect your ability to be a juror?

## Insurance

24. Have you ever had a dispute with an insurance company; been denied coverage; had a policy terminated; or otherwise experienced what you believe to be unfair treatment from an insurance company?

25. Has anyone here ever had to file a claim with their insurance company?

    a) What was the nature of the claim?

    b) Were you satisfied with the way your insurance company handled the claim?

## Burden of Proof

26. In our court system, the plaintiff gets to go first, and we must wait until they are done before we can tell our side of the case.  Then, they get to make a rebuttal case – but we cannot present another answer to that. So, the plaintiff gets to go first and last. As much as I would like to answer after they get in the last word, I will not be able to. Does anyone know why the plaintiff gets to go first and last?

27. Does everyone understand that the plaintiff willingly accepts this burden of proof when it files a case or else the plaintiff would not be here?

28. In civil trials, the defense has no burden. If the plaintiff does not meet its burden of proof, the verdict is for the defense, even if we, the defense, do nothing. Does this make anyone uncomfortable?

## Health and Medical

29. Is there anyone here who has any medical background, training, or expertise?

30. Who has been seriously injured in an accident of any type (not just a slip and fall), or has a very close family member or friend who has been seriously injured in an accident of any type?

31. Has anyone been told that they needed to have a medical operation but chose not to for some reason?

    a)  If yes, please explain the reason.

32. Does anyone here suffer from a chronic health condition (e.g., heart disease, kidney disease, fibromyalgia) and/or suffer from chronic pain (e.g., back pain, chronic migraine headaches) or disability?

33. Who has been the primary caretaker for a close friend or relative suffering from a chronic illness or chronic pain?

34. Who has ever had a dispute with a doctor, another type of medical provider, or a medical insurance company?

    a)  Was the issue resolved to your satisfaction?

## Sympathy

35. The law in Georgia says that jury decision may not be based on sympathy for the person who files the lawsuit. The law says that the jury must objectively consider the evidence and follow the law to a proper verdict. During this trial, however, you may at times feel sympathy for Ms. Jones. So, there is the issue of sympathy on the one hand, and the issue of making a legal decision on the other. And the

question I have for all of you is: Who thinks they may have trouble, even a little, in keeping those things separate and making this legal decision absent any sympathy you may feel?

36. Who thinks that there might be something wrong with the law, in that it requires you to leave sympathy behind when making a decision?

## **Other**

37. Based on what you have heard about this case so far, does anyone have a strong belief or opinion that might stand in your way of being an impartial juror?

   a) Who has a valid reason why you cannot serve as a fair and impartial juror in this case?

38. Is anyone thinking - if I were the defendant Mr. Harvey, I would not want me as a juror on this case?

39. Does anyone believe business in general are not doing enough to safeguard customers?

40. Does anyone believe business are more concerned with making money instead of making safeguarding their business for customers?

41. Who finds themselves leaning in favor of the plaintiff to win this case? Who would like to see the plaintiff win this case?

42. In civil cases, both sides typically hire experts to testify on behalf of the plaintiff or the defense. Some jurors believe that experts are "hired guns" who will say whatever they are paid to say. Other jurors believe that experts provide unbiased opinions based upon the case facts. Which type of juror would you say that you are closer to?

41. The judge will explain the law, in cases like these, the law you are to follow and apply, as you deliberate. How many of you think that if they disagreed with the law they would have difficulty, even a little, in applying the law?

## ATTACHMENT C

## Plaintiff's Outline of the Case

On November 10, 2015, Plaintiff entered Defendant's grocery store, located at 8876 Dallas Acworth Highway (Store # 634), Dallas, Georgia, to purchase groceries and stop by the pharmacy.  Upon entering the store, Plaintiff picked up a shopping basket and began walking in the direction of the Natural Foods aisle. As he approached a display of fresh baked bread, he unknowingly stepped on a piece of a banana peel, causing his foot to slip out from under him.  As he fell backwards, Plaintiff landed awkwardly on the cement floor and suffered serious bodily injuries. At the time of his fall, Plaintiff was looking forward while holding a hand basket and walking at a normal pace. Plaintiff did not see the banana peel before it caused his fall.

Just prior to Plaintiff's fall, Defendant's employees were in the immediate vicinity of the hazardous condition, and, through its employees and agents, Kroger knew or should have known the condition presented a hazard to its customers. Video shows Kroger employees, moments before the fall, walking past the location of the fall immediately before it occurred, but taking no action to remove the hazard or warn its customers.  In addition, Defendant's employees, including manager Brandine Armand, did not follow or perform reasonable safety practices that would have led to the discovery of the hazardous condition in a timely manner. The lack of inspections and warnings to its customers did not meet the standard of care owed by a landowner/occupier to its customers.

Defendant's manager, Brandine Armand, stopped a store wide floor sweep from being performed shortly before Plaintiff's fall and its employees did not perform timely visual inspections in the area despite company guidelines and training materials to the contrary. In addition, Defendant's employees were in the immediate vicinity of the hazardous condition and, despite being able to correct the problem, did not take steps to make the area safe for Defendant's customers. Defendant's employees' disregard and nonperformance of reasonable safety practices, including timely inspections and floor sweeps resulted in the hazardous condition causing injury to Plaintiff.

## Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law Creating a Specific Legal Duty Relied Upon by Plaintiff

### *Negligence*

"[N]egligence may consist in the doing of something which should not have been done. Negligence may also consist in leaving undone that which ought to have been done. It may, therefore, be a fault of omission as well as a fault of commission." Ferguson v. Gurley, 105 Ga. App. 575, 579 (1962).

Specific principles, codes, statutes, and regulations include General negligence principles, premises liability, vicarious liability and damages; O.C.G.A. §§ 51-1-1, 51-1-2, 51-3-1, 51-12-1, 51-12-2, 51-12-3 and 51-12-4.

Plaintiff alleges that Defendant had superior knowledge of the hazardous condition that caused his injuries and its failure to exercise reasonable care under the circumstances lead to his fall. O.C.G.A. § 51-3-1. Superior knowledge can be

established by proof of actual or constructive knowledge of the existing danger. Robinson v. Kroger Co., 268 Ga. 735, 748-749 (1997).

A claimant is not required to prove actual knowledge of a hazard as long as the evidence supports a finding of constructive knowledge. "Constructive knowledge may be shown by demonstrating that (1) an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition prior to the fall, or (2) the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises. Benefield v. Tominich, 308 Ga. App. 605, 608 (2011). See also Augusta Country Club, Inc. v. Blake, 280 Ga. App. 650, 653 (2006); KMart Corp. v. Jackson, 239 Ga. App. 176, 178 (1999); Kroger Co. v. Brooks, 231 Ga. App. 650, 654 (1998).

"Constructive knowledge may be inferred where there is evidence that an employee of the owner was in the immediate vicinity of the dangerous condition and could easily have noticed and removed the hazard. [Cit.]" Hughes v. Hosp. Auth. of Floyd County, 165 Ga. App. 530, 531 (1983); accord Blake v. Kroger Co., 224 Ga. App. 140, 142 (1996); Thompson v. Regency Mall Assoc., 209 Ga. App. 1, 3 (1993); Food Giant v. Cooke, 186 Ga. App. 253, 254 (1988); see also Winn-Dixie Stores v. Hardy, 138 Ga. App. 342, 345 (1976), which case first set forth this standard. Winn-Dixie Stores v. Hardy, supra, based its constructive knowledge standard upon S. H. Kress & Co. v. Flanigan, 103 Ga. App. 301, 303 (119 S.E.2d 32) (1961), where the employee was six feet away, and Sharpton v.

Great A. & P. Tea Co., *supra* at 285., where the employee was several check-out aisles away, restocking merchandise on a different check-out aisle.

The length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location. Davis v. Bruno's Supermarkets, 263 Ga. App. 147, 150 (2003); Augusta Country Club, Inc. v. Blake, 280 Ga. App. 650 (2006). Thus, under the alternative method for proving superior knowledge, to establish constructive notice of a hazard, the jury may consider whether a reasonable inspection procedure was not in place or was not followed to determine if the hazard was left in place for an unreasonable length of time. Kroger v. Schoenhoff, 324 Ga. App. 619, (2013); Shepard v. Winn Dixie Stores, 241 Ga. App. 746 (1999).

## **Damages**

Plaintiff seeks an award of damages for the bodily injuries he sustained because of his fall on November 10, 2015. Plaintiff continues to experience pain and discomfort from his injuries, some of which are permanent in nature and involve ongoing medical treatment.

### *Special and General Damages:*

Plaintiff seeks recovery for his medical expenses, lost wages and pain and suffering, past, present, and future, including, but not limited to, any aggravation of preexisting conditions, if any, which were made worse by his fall. Pursuant to

O.C.G.A. §§ 51-12-2(b), 51-12-3, and 51-12-7, Plaintiff seeks special damages in the amount of $401,862.64 for his medical bills and $7,290.72 in lost wages. Plaintiff also seeks general damages, pursuant to O.C.G.A. § 51-12-2(a) and § 51-12-4, which flow from the Defendant's tortious acts and are determined by the enlightened conscience of an impartial jury.

"The assessment of a monetary value for pain and suffering is a matter for the enlightened conscience of the jury," Turpin v. Worley, 206 Ga. App. 341, 343 (1992), and the jury may consider:

> [i]nterference with normal living, interference with enjoyment of life, loss of capacity to labor and earn money, impairment of bodily health and vigor, the fear of extent of injury, shock of impact, actual pain and suffering, past and future, mental anguish, past and future, [and the extent to which the plaintiff] must limit activities.

Food Lion v. Williams, 219 Ga. App. 352, 355 (1995). Notably, however, "[t]he law infers bodily pain and suffering from personal injury." Cochran v. Lynch, 126 Ga. App. 866, 868 (1972). *See* Reiss v. Howard Johnson's, Inc., 121 Ga. App. 119, 119 (1970). Moreover, once the jury determines that the plaintiff is entitled to recover from a defendant for a negligent act, the plaintiff is "entitled to recover damages commensurate with the injury sustained by [him]." Slaughter v. Atlanta Coca-Cola Bottling Co., 48 Ga. App. 327, 327 (1934).

*Aggravation:*

To the extent Plaintiff had prior pain or preexisting health problems made worse by the fall, Defendant took Plaintiff as it found him. That is, the fact that Plaintiff may have had certain preexisting conditions or disabilities, such as degenerative disc disease or past injuries, which, combined with the Defendant's negligent act(s), if any, caused, contributed to, or worsened Plaintiff's condition(s), Defendant is not absolved of liability, so long as the jury determines Defendant was negligent and such negligence was a contributing cause of Plaintiff's subsequent losses.  O.C.G.A. § 51-12-3(a)-(b); Setliff v. Littleton, 264 Ga. App. 711, 714 (2003) (egg-shell plaintiff and aggravation charge warranted when defense tried to attribute plaintiff's injuries to origin other than the auto collision and to a combination of preexisting conditions and degenerative problems); AT Systems Southeast, Inc. v. Carnes, 272 Ga. App. 671, 673 (2005) ("[I]t has long been the rule that a tortfeasor takes a plaintiff in whatever condition he finds him. A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act [is] negligent.) (quoting Coleman v. Atlanta Obstetrics & Gynecology Group, 194 Ga. App. 508, 510(1) (1990)).

*Permanent Injuries and Damages:*

Barker v. Crum Trucking Co., 137 Ga. App. 435, 436, (1976) ("The jury would have been authorized to infer that the effect of the injuries could be permanent from the character of the suffering and the length of time it had continued. This is true even though a physician testified that the injuries were temporary. The question

was for the jury, who could, if they saw fit, attach as much probative value to the testimony of the person injured as to the opinion of the physician. It was error to refuse to admit the evidence or to give the charges for the reason assigned.") (citing City of Macon v. Yaughn, 83 Ga. App. 610, 612 (1951) and Southern Ry. Co. v. Petway, 7 Ga. App. 659, (1910)).

*Attorney's fees*:

Depending on the outcome of the trial, Plaintiff may be entitled to recover fees and expenses should a verdict be obtained in the requisite amount.  O.C.G.A. § 9-11-68.

## ATTACHMENT "D"

On November 10, 2015, Plaintiff Thomas Harvey visited the Kroger store located at 8876 8876 Dallas Acworth Highway, Dallas, Georgia.  During this visit, Plaintiff alleges he on a banana peel on the floor in the bakery section.  Plaintiff cannot say how long the banana peel was on the floor.  Numerous employees and customers can be seen on the store's video moving through the area beforehand (although the exact location of the banana peel, and the "incident," are just outside of camera view).  It is undisputed that no one else slipped in the banana peel and further it is undisputed that no one reported dropping a banana peel or seeing anything on the floor.  Numerous customers moved through the area less than ten minutes before the litigated occurrence.  Employees of the store can be seen walking the area beforehand without any indication that a foreign substance was present.

Plaintiff sued Kroger for certain injuries not caused by him accident at the store.  Dr. Hal Silcox, M.D.  has reviewed the medical evidence in this case and will give sworn testimony that Plaintiff had medical conditions in his body existing before his accident at Kroger, and that the treatment, including surgery, he claims in this lawsuit addressed those conditions not caused by his accident at Kroger.

### Relevant Rules, Regulations, Statutes Ordinances, and Illustrative Case Law

O.C.G.A. §13-6-11

O.C.G.A. § 51-3-1;

O.C.G.A. § 51-11-7;

O.C.G.A. § 51-12-7;

O.C.G.A. § 51-12-8;

O.C.G.A. § 51-12-9;

O.C.G.A. § 51-12-11;

O.C.G.A. § 51-12-12;

A plaintiff asserting a cause of action for negligence under Georgia law must establish (1) the existence of a duty on the part of the defendant, (2) a breach of that duty, (3) causation, and (4) damages.  Rasnick v. Krishna Hospitality, Inc., 289 Ga. 565, 713 S.E.2d 835, 837 (Ga.2011) (citing John Crane, Inc. v. Jones, 278 Ga. 747, 604 S.E.2d 822, 825 (Ga.2004)).

Under Georgia premises law, a landowner owes an invitee a duty to "exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51–3–1; Bartlett v. McDonough Bedding Co., 313 Ga. App. 657, 722 S.E.2d 380, 382 (Ga.Ct.App.2012) (quoting Gaydos v. Grupe Real Estate Investors, 211 Ga.App. 811, 440 S.E.2d 545, 547 (Ga.Ct.App.1994)).

Liability is predicated on the landowner's "superior knowledge of the condition that subjected the invitee to an unreasonable risk of harm."  Barlett, 313 Ga. App. at 658.

The invitee must also exercise ordinary care to avoid the consequences of any such negligence on the part of an owner/occupier, and the failure to do so bars an invitee's recovery.  Barlett, 313 Ga. App. at 658.

It is incumbent upon the plaintiff to use the degree of care necessary under the circumstances to avoid injury to [himself or] herself.  Bartlett, 313 Ga. App. at 658.

A landowner is not an insurer of the invitee's safety. Id. (quoting <u>Gaydos</u>, 440 S.E.2d at 547). The duty extends to an invitee where the landowner has actual or constructive knowledge of a hazard and the invitee, in the exercise of ordinary care, lacks knowledge of the hazard. <u>See</u> <u>Whitley v. H & S Homes</u>, LLC, 279 Ga. App. 877, 632 S.E.2d 728, 729 (Ga.Ct.App.2006) (citing <u>Ford v. Bank of Am. Corp.</u>, 277 Ga.App. 708, 627 S.E.2d 376, 378 (Ga.Ct.App.2006)); <u>see</u> <u>also</u> <u>id.</u> (quoting <u>Garrett v. Hanes</u>, 273 Ga. App. 894, 616 S.E.2d 202, 204 (Ga.Ct.App.2005)) ("The true basis for an owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of injury."). Put another way, "a plaintiff must show that she was injured by a hazard that the owner 'should have removed in the exercise of ordinary care for the safety of the invited public.' " <u>Ahuja v. Cumberland Mall, LLC</u>, 821 F.Supp.2d 1317, 1324 (N.D.Ga.2010) (quoting <u>Am. Multi–Cinema, Inc. v. Brown</u>, 285 Ga. 442, 679 S.E.2d 25, 27 (Ga.2009)).

"[I]n a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to the actions or conditions within the control of the owner/occupier." <u>Robinson v. Kroger</u>, 268 Ga. 735, 493 S.E.2d 403, 414 (Ga.1997); <u>see</u> <u>also</u> <u>Am. Multi–Cinema</u>, 679 S.E.2d at 27–28.

A plaintiff alleging constructive knowledge of a hazard must show that (1) an employee was in the immediate vicinity and easily could have seen and removed the substance; or (2) that the substance had been on the floor for a sufficient length of time that the defendant should have discovered and removed it during a reasonable

inspection. Deborde v. KFC U.S. Properties, Inc., No. 1:05–cv–1228–JOF, 2007 WL 781881, at *2 (N.D.Ga. Mar.12, 2007) (citing Medders v. Kroger, 257 Ga. App. 876, 572 S.E.2d 386, 388 (Ga.Ct.App.2002)); see also Brown v. Host/Taco Venture, 305 Ga. App. 248, 699 S.E.2d 439, 442 (Ga.Ct.App.2010); Matthews v. The Varsity, Inc., 248 Ga. App. 512, 546 S.E.2d 878, 880 (Ga.Ct.App.2001); Roberson v. Winn–Dixie Atlanta, Inc., 247 Ga.App. 825, 544 S.E.2d 494, 495 (Ga.Ct.App.2001). "Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure." Kauffman v. Eastern Food & Gas, Inc., 246 Ga. App. 103, 539 S.E.2d 599, 601 (Ga.Ct.App.2000).

In Georgia, "[r]egardless of the adequacy of any inspection program, when an owner shows that an inspection occurred within a brief period of time prior to an invitee's fall, the inspection procedure was adequate as a matter of law and defeats an invitee's negligence action." Mucyo v. Publix Supermarkets, Inc., 301 Ga. App. 599, 688 S.E.2d 372, 375 (Ga.Ct.App.2009) (citing Medders, 572 S.E.2d at 388); see also Matthews, 546 S.E.2d at 881; Brown, 699 S.E.2d at 443.

**ATTACHMENT E**

**<u>Facts Stipulated by the Parties</u>: None at this time. However, Plaintiff**

**proposes the following stipulations of fact for Defendant's consideration:**

1. On November 10, 2015, Defendant Kroger was the owner/occupier of a grocery store located at 8876 Dallas Acworth Highway (Store # 634), Dallas, Georgia.

2. On November 10, 2015, Plaintiff fell while grocery shopping at Defendant's grocery store identified as Store #634.

3. The video footage from Kroger's surveillance cameras from November 10, 2015 and produced during the course of this case truly and accurately depicts the events recorded and its authenticity is stipulated.

## ATTACHMENT F-1
### PLAINTIFF'S WITNESSES

PLAINTIFF WILL HAVE PRESENT AT TRIAL:

1.  Plaintiff Thomas Harvey (can be contacted through counsel of record)

PLAINTIFF MAY HAVE PRESENT AT TRIAL:

1) Defendant's corporate representative.

2) All witnesses identified by Defendant in Defendant's Initial Disclosures and discovery responses.

3) Thomas Jenkins, Kroger manager at Store #634.

4) Brandine Armand, Kroger manager on duty at Store #634 at the time of Plaintiff's fall.

5) Kit Watson, Kroger employee.

6) Jacqueline Dingler, Kroger employee.

7) Adam Bowman, Kroger employee.

8) Pamela Brown, Kroger employee.

9) Lynne Perry, Kroger employee.

10) Kroger 30(B)(6) representative, Adam Bowman.

11) Patrick Tom, sushi manager at Kroger Store #634 (66 Lanier Ridge, Acworth GA 30101).

12) Jeff Ferguson, a former Kroger employee (777A Flamingo Drive Ormand Beach, Florida 32176.

13) Dr. Ali Mortazavi, Plaintiff's treating physician (Resurgens Orthpaedics, 2041 Mesa Valley Way, Suite 100 Austell, GA 30106).

Dr. Mortazavi is expected to present evidence, under Federal Rule of Evidence 702, 703, or 705 as to the extent of Plaintiff's injuries, including diagnosis and prognosis, including (a) the causal relationship between

Plaintiff's injuries, and the incident at issue in the present matter, (b) the treatment his medical practice provided to Plaintiff to address his injuries, (c) the nature and extent of any preexisting medical conditions that were aggravated by the subject incident, and (d) how Plaintiff's injuries may impact his future health and/or quality of life. Dr. Mortazavi is expected to testify by way of video deposition, which has been schedule for July 21, 2022.

14) Dr. Said Elshihabi, Plaintiff's treating physician (Legacy Brain and Spine, LLC, 1900 The Exchange SE, Building 200, Atlanta, GA 30339).

Dr. Elshihabi is expected to present evidence, under Federal Rule of Evidence 702, 703, or 705 as to the extent of Plaintiff's injuries, including diagnosis and prognosis, and (a) the causal relationship between Plaintiff's injuries, and the incident at issue in the present matter, (b) the treatment he provided to Plaintiff in connection with the injuries presented, (c) the nature and extent of any preexisting medical conditions that were aggravated by the subject incident, and (d) how Plaintiff's injuries may impact his future health and/or quality of life.

15) Dr. Edward Spilker, Plaintiff's treating physician (Spilker Family Medicine, 1690 Stone Village Lane, #921, Kennesaw, GA 30152).

Dr. Spilker was Plaintiff's family doctor at the time of the subject incident and is expected to present evidence, under Federal Rule of Evidence 702, 703, or 705 as to the extent of Plaintiff's injuries, including diagnosis and prognosis, such as (a) Plaintiff's complaints and symptoms presented after the subject incident, (b) the causal relationship between Plaintiff's injuries, and the incident at issue in the present matter, (c) the treatment and recommendations he recommended to Plaintiff to address his injuries, (d) the nature and extent of any preexisting medical conditions he treated Plaintiff for prior to the subject incident, and (d) how Plaintiff's injuries may impact his future health and/or quality of life.

16) Dr. Michael Schaufele, Plaintiff's treating physician (Alliance Spine and Pain Centers, 400 Tower Road, Marietta, GA 30060).

Dr. Schaufele is expected to present evidence, under Federal Rule of Evidence 702, 703, or 705 as to the extent of Plaintiff's injuries, including diagnosis and prognosis, and (a) the causal relationship between Plaintiff's injuries, and the incident at issue in the present matter, (b) the treatment his medical practice provided to Plaintiff to address his injuries, (c) the nature and extent of any preexisting medical conditions that were aggravated by the

subject incident, and (d) how Plaintiff's injuries may impact his future health and/or quality of life.

17) Dr. Myrlynn Delille, Plaintiff's treating physician. (Wellstar Pain Medicine, 490 Ivey Road NW, Acworth, GA 30101).

Dr. Delille is expected to present evidence, under Federal Rule of Evidence 702, 703, or 705 as to the extent of Plaintiff's injuries, including diagnosis and prognosis, and (a) the causal relationship between Plaintiff's injuries, and the incident at issue in the present matter, (b) the treatment his medical practice provided to Plaintiff to address his injuries, (c) the nature and extent of any preexisting medical conditions that were aggravated by the subject incident, and (d) how Plaintiff's injuries may impact his future health and/or quality of life.

18) Paulette Harvey, Plaintiff's spouse (1369 Chester Harris Drive, Dallas GA 30132. This witness can be contacted through Plaintiff's counsel.)

Paulette Harvey is Plaintiff's wife, and has knowledge of Plaintiff's injuries, including how the injuries have affected Plaintiff's life.

19) Amanda Harvey O'Rear, Plaintiff's daughter (770 789-9862. This witness can be contacted through Plaintiff's counsel.)

Amanda O'Rear is Plaintiff's daughter, and has knowledge of Plaintiff's injuries, including how the injuries have affected Plaintiff's life.

20) Russell O'Rear, Plaintiff's son-in-law (770 789-9863. This witness can be contacted through Plaintiff's counsel.)

Russell O'Rear is Plaintiff's son-in-law, and has knowledge of Plaintiff's injuries, including how the injuries have affected Plaintiff's life.

21) Brandilyn Harvey Lebhaft, Plaintiff's daughter (770 778-2522. This witness can be contacted through Plaintiff's counsel.)

Brandilyn Harvey Lebhaft is Plaintiff's daughter, and has knowledge of Plaintiff's injuries, including how the injuries have affected Plaintiff's life.

22) Craig Lebhaft, Plaintiff's son-in-law (770 652-7150. This witness can be contacted through Plaintiff's counsel.)

Craig Lebhaft is Plaintiff's son-in-law, and has knowledge of Plaintiff's injuries, including how the injuries have affected Plaintiff's life.

23) Anyone identified as a witness in Defendant's portion of this Pretrial Order.

## ATTACHMENT "F-2"
## Defendant's Witness List

Defendant will call at trial:

None.

Defendant may call at trial:

- Plaintiff Thomas Harvey;

- Brandine Armand, address to be supplemented;

- Adam Bowman, address to be supplemented;

- Jacqueline Dingler, address to be supplemented;

- Thomas Jenkins, address to be supplemented;

- Lynn Perry, address to be supplemented;

- Patrick Tom, address to be supplemented;

- Kroger representative;

- Hal Silcox, M.D., Board Certified Orthopedic Surgeon, who reviewed Mr. Harvey's pre-, and post- incident medical records and radiographic/diagnostic films.

- Any hourly employee working at Kroger Store 634 on November 10, 2015;

- Plaintiff's treating physicians, therapists, or other medical providers;

- Records custodians necessary to lay proper foundation as to medical and employment records of the Plaintiff (if authenticity of documents not stipulated to or the Court so requires);

- Any and all persons identified in discovery by any party;

- Any witness identified in Plaintiff's portion of the Pre-Trial Order; and

- Any witness necessary for the purpose of impeachment, rebuttal or cross-examination.

## ATTACHMENT G-1
## PLAINTIFF'S EXHIBIT LIST

| | Exhibit No. | Exhibit Name/Description |
|---|---|---|
| | 1 | Kroger video surveillance recordings (November 10, 2015) |
| | 2 | Kroger Safety Huddle Topics (period 4) |
| | 3 | Kroger Safety Huddle Topics (period 8) |
| | 4 | Kroger Safety Huddle Topics (period 11) |
| | 5 | Kroger Safety Huddle Topics (period 13) |
| | 6 | Kroger Customer Incident Reporting Procedures packet |
| | 7 | Kroger Dept. Safety Requirements form |
| | 8 | Kroger Health and Safety Document |
| | 9 | Kroger Floor Plan |
| | 10 | Kroger Incident Report documents (November 10, 2015) |
| | 11 | Kroger Floor Inspection Time Report (November 10, 2015) |
| | 12 | Still photo from video |
| | 13 | Still photo from video |
| | 14 | Still photo from video |
| | 15 | Still photo from video |
| | 16 | Still photo from video |
| | 17 | Still photo from video |
| | 18 | Still photo from video |
| | 19 | Still photo from video |
| | 20 | Still photo from video |
| | 21 | Certified medical records from Metro Atlanta Ambulance |
| | 22 | Certified medical records from Wellstar Paulding Hospital |
| | 23 | Certified medical records from Spiker Family Medicine |
| | 24 | Certified medical records from Wellstar Medical Group Neurology |
| | 25 | Certified medical records from Wellstar Paulding Imaging Center |
| | 26 | Certified medical records from Back in Line Chiropractic |
| | | |

| | | |
|---|---|---|
| | 27 | Certified medical records for Vascular Surgical Associates |
| | 28 | Certified medical records from Resurgens Orthopaedics |
| | 29 | Certified medical records from Wellstar Cobb Hospital |
| | 30 | Certified medical records from Pain Solutions Treatment Centers /Alliance Spine |
| | 31 | Certified medical records from Wellstar Pain Medicine |
| | 32 | Certified medical records from Legacy Brain & Spine |
| | 33 | Certified medical records from Wellstar Pain Medicine |
| | 34 | Wellstar Medical Group Neurosurgery |
| | 35 | Medical illustrations of surgery |
| | 36 | Photographs of Plaintiff prior to November 10, 2015 |
| | 37 | Photographs of Plaintiff after November 10, 2015 |
| | 38 | Medical bills (redacted) |
| | 39 | Billing Summary of all charges |
| | 40 | Defendant's Responses to Plaintiff's Interrogatories |
| | 41 | Defendant's Answer to Plaintiff's Complaint |
| | 42 | Defendant's responses to Plaintiff's Request for Admissions |
| | 43 | Defendant's Responses to Plaintiff's Interrogatories from original action in Paulding County |
| | 44 | Defendant's Supplemental Responses to Plaintiff's Interrogatories from original action in Paulding County |
| | 45 | Kroger Star Safety 360 packet (Kroger bates stamped 27 – 50) |
| | 46 | Kroger Star Safety audit instruction (Kroger bates stamped 97) |
| | 47 | Kroger Star Safety Program Objectives (Kroger bates stamped 103 – 104) |
| | 48 | Kroger Customer Slip, Trip and Fall Safety Review (Kroger bates stamped 191 – 198) |
| | 49 | GL Accident Review Guidelines (Kroger bates stamped 459) |
| | 50 | Kroger Star Meeting Minutes for 2015 |
| | 51 | 911 call |
| | 52 | Whitaker Oil Lost Wage Claim Form |

| | 53 | All Pleadings filed in the instant action |
|---|---|---|
| | 54 | Documents, affidavits produced by Defendant for use as impeachment, rebuttal or cross examination |
| | 55 | Any documents identified by Defendant |

## ATTACHMENT "G-2"
## Defendant's Exhibit List

Defendant's list of all documentary and physical evidence that will be tendered at trial.

1. Kroger Store video footage from the date of the litigated occurrence;

2. Still shots of the store video;

3. Photographs of the location of the litigated occurrence;

4. Incident report materials regarding the litigated occurrence;

5. Diagram / layout of subject store;

6. Material portions of training materials, as produced;

7. Material portions of STAR program materials, as produced;

8. Material portions of Associate Handbook, as produced;

9. Any and all of Plaintiff's medical and billing records;

10. Medical Records and diagnostic studies from Advanced Home Care;

11. Medical Records and diagnostic studies from Alliance Spine and Pain Centers;

12. Medical Records and diagnostic studies from Back in Line Chiropractic;

13. Medical Records and diagnostic studies from Bortolazzo Group;

14. Medical Records and diagnostic studies from Center for Spine Intervention;

15.    Medical Records and diagnostic studies from Chastain Resurgens Orthopaedics;

16.    Medical Records and diagnostic studies from Cora Chiropractic Clinic, Inc.;

17.    Medical Records and diagnostic studies from LabCorp;

18.    Medical Records and diagnostic studies from Legacy Brain & Spine;

19.    Medical Records from MAK Anesthesia NW;

20.    Medical Records and diagnostic studies from Metro Atlanta Ambulance Service;

21.    Medical Records and diagnostic studies from Pain Solutions Treatment Centers;

22.    Medical Records and diagnostic studies from Quantum Radiology Northwest;

23.    Medical Records and diagnostic studies from Quest Diagnostics;

24.    Medical Records and diagnostic studies from Resurgens Orthopaedics;

25.    Medical Records and diagnostic studies from Spiker Family Medicine;

26.    Medical Records and diagnostic studies from Vascular Surgical;

27.    Medical Records and diagnostic studies from Wellstar Cobb Hospital;

28. Medical Records and diagnostic studies from Wellstar Medical Group Neurology;

29. Medical Records and diagnostic studies from Wellstar Neurosurgey and Spine Center;

30. Medical Records and diagnostic studies from Wellstar Pain Medicine;

31. Medical Records and diagnostic studies from Wellstar  Paulding Hospital;

32. Medical Records and diagnostic studies from Welstar Windy Hill Hospital;

33. Pharmacy Records from The Kroger Co. Pharmacy;

34. Records of Plaintiff's claimed damages (including but not limited to the medical bills and records from Plaintiff's medical providers);

35. Deposition of Plaintiff Thomas Harvey and Exhibits attached thereto;

36. Deposition of Brandine Armand, and Exhibits attached thereto;

37. Deposition of Adam Bowman, and Exhibits attached thereto;

38. Deposition of Pamela Brown, and Exhibits attached thereto;

39. Deposition of Jacqueline Dingler, and Exhibits attached thereto;

40. Deposition of Thomas Jenkins, and Exhibits attached thereto;

41. Deposition of Lynn Perry, and Exhibits attached thereto;

42. Deposition of Patrick Tom, and Exhibits attached thereto;

43.    Deposition(s) of any and all treating physicians taken after the filing of this CPTO, to include any such Exhibits;

44.    Deposition(s) of Hall Silcox, M.D.; and Exhibits attached thereto;

45.    Expert Report of Hal Silcox, M.D.;

46.    Any Material Relied Upon by Expert Hal Silcox, M.D.;

47.    All pleadings and discovery of record;

48.    Plaintiff's Responses to Defendant's First Interrogatories to Plaintiff Thomas Harvey;

49.    Plaintiff's Responses to Defendant's First Request for Production of Documents to Plaintiff Thomas Harvey;

50.    Plaintiff's Responses to Defendant's Requests for Admissions;

51.    Documents named in Plaintiff's portion of the Pre-Trial Order;

52.    Any and all document and information necessary for the purpose of impeachment, rebuttal or cross-examination; and

53.    Defendant may supplement this response as additional documents become available and/or appear to be material to any issue in controversy if not stated above.

## <u>ATTACHMENT G-1A</u>
## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EXHIBIT LIST

Defendant objects to Exhibit 45 as it contains repetitive materials as Exhibits 2-6. Defendant further objects to Exhibit 35, as it is vague and Defendant cannot determine what that exhibit is. Defendant further objects to the extend it was not produced during discovery.

## ATTACHMENT G-2A
## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S EXHIBIT LIST

1. Plaintiff objects to Defendant's Exhibit Nos. 6 & 8 to the extent Plaintiff has not received complete copies of "Material portions of training materials" and "Material portions of Associate Handbook." Upon exchanging exhibits, if this material was produced, Plaintiff will withdraw his objection.

2. Plaintiff objects to Defendant's Exhibit No. 33 on the grounds that this category of documents does not provide sufficient detail to allow Plaintiff to ascertain whether it constitutes proper evidence.

3. Plaintiff objects to Defendant's Exhibit Nos. 44 and 45 on the grounds that the introduction of a medical report and/or an affidavit does not allow Plaintiff the opportunity to cross examine the witness. Moreover, Plaintiff objects to same as an attempt to bolster witness testimony through written word which is redundant and duplicative in nature and potentially violates the continuing witness rule.

4. Plaintiff objects to Defendant's Exhibit No. 51 to the extent any evidence introduced for such use has not been previously disclosed.

Plaintiff reserves objections to any material, including the medical records listed between Nos. 9 through 32, in the event they have not been produced during discovery but would warrant proper objections. Plaintiff will withdraw this objection upon the exchange of exhibits if all of said records were produced.

**ATTACHMENT H-1**
**Plaintiff's Trial Brief**

**Favor-based Challenges and Rehabilitation of Potential Jurors**

It is the duty of the trial court to ensure cases "are tried by a jury such that not even the suspicion of bias (leaning) or prejudice (prejudgment) can attach to any member thereof." Temples v. Central of Ga. Ry. Co., 15 Ga. App. 115 (1914) (quoting Jacobs v. State, 1 Ga. App. 519 (1907)).  Accordingly, the jury panel must be cleansed of individual jurors who may be unfairly inclined for or against any party to the suit.  The voir dire process encompasses a system of challenges designed to exclude potential jurors harboring such bias or prejudgment from the final jury panel.  The challenge of a juror for suspicion of bias or partiality is done either as a principal challenge for cause or a challenge for favor.  See Smith v. Folger, 237 Ga. App. 888, 889 (1999).

Principal challenges for cause are made whenever it appears that a potential juror is disqualified as a matter of law.  "A principal challenge is such, where the cause assigned carries with it *prima facie* evident marks of suspicion, either of malice or favor," such as a disqualifying family relationship to a party or a financial interest in the outcome of the case.  Id. at 889.  In Georgia, principle challenges are set forth by statute.  O.C.G.A. §§ 15-12-135, 163.  More insidious and difficult to discern are the favor-based reasons for challenge.  In determining whether to strike a potential juror on a favor-based challenge, the court sits as the trier of fact,

determining whether the evidence presented concerning a juror's potential bias would prevent that juror from acting as an impartial member of the panel. To date, no appellate decision exists in which a trial court was reversed for excusing a potential juror for cause.

On the other hand, in the landmark decision of Kim v. Walls, 275 Ga. 177 (2002), in an opinion authored by former Chief Justice Hugh P. Thompson, the Georgia Supreme Court reversed a trial court for abuse of discretion when it failed to excuse a juror on a favor-based challenge. See also Sellers v. Burrowes, 283 Ga. App. 505 (2007); Guoth v. Hamilton, 273 Ga. App. 435 (2005); and Meintzer v. Weinberg, 212 Ga. App. 307 (1994). Walls was a medical negligence case tried before a jury that returned a verdict in favor of the defendant doctor. On appeal, the plaintiff contended that the trial court abused its discretion for failing to grant a favor-based challenge for cause concerning a juror who was a nurse at the same hospital and enjoyed a professional relationship with the defendant doctor. In response to *voir dire* questions posed to her by plaintiff's counsel, the nurse juror admitted that she hoped the verdict came out in favor of her co-worker doctor. She also admitted that her mind was not evenly balanced between the parties. Counsel moved to excuse the juror for favor. The trial court posed a rehabilitation question, and the biased juror responded that she could be fair. Based on that response, the trial court retained the juror, forcing plaintiff's counsel to expend a precious peremptory challenge. The Court of Appeals (later affirmed by the Georgia Supreme Court) concluded that the trial court abused its discretion by failing to

excuse the juror, even though the juror responded appropriately to the "rehabilitation" question.

Furthermore, the Court of Appeals announced that a positive response to the customary use of the rehabilitation question is not sufficient to cure the error inherent in leaving a juror who has indicated bias or prejudice against a party, the subject matter, or their counsel on the jury:

> [W]e disagree with the way that the 'rehabilitation' question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors.  Especially when the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call.

Walls at 260.  The Court of Appeals further advised that "[a] trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in the courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury. . .." Id.

The Walls decisions are simply a restatement of the fundamental principles historically serving as the foundation of the jury system.  "Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall

be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial." <u>Temples</u>, 15 Ga. App. at 115.

As the parties in this case endeavor to impanel an impartial jury, Plaintiff respectfully requests that the Court excuse any prospective jurors who raise any reasonable apprehension regarding their ability to be fair while ensuring that the parties are left with a full panel of competent and impartial jurors from which to strike.

**ATTACHMENT I-1**

**<u>Plaintiff's Proposed Verdict Form</u>**

Plaintiff proposes the following verdict form for trial:

**VERDICT**

1.

_____ We, the jury, find in favor of the Plaintiff in the amount of:

$_____

OR

_____ We, the jury, find in favor of the Defendant and award no

damages to Plaintiff.

This _____ day of _____, 2022.

_____

Jury foreperson

**ATTACHMENT "I-2"**
**Defendant's Proposed Verdict Form**

**Claims raised by Plaintiff Thomas Harvey**

1. **Do you find by a preponderance of the evidence that Defendant The Kroger Co. breached a duty owed to Plaintiff Thomas Harvey?**

   ___ Yes
   ___ No

   If yes, continue to question 2.  If no, please sign below.

2. **Do you find by a preponderance of the evidence that Defendant The Kroger Co.'s breach proximately caused Plaintiff Thomas Harvey's injuries?**

   ___ Yes
   ___ No

   If yes, continue to question 3. If no, please sign below.

3. **Do you find by a preponderance of the evidence that Plaintiff Thomas Harvey exercised ordinary care as required by law?**

   ___ Yes
   ___ No

   If yes, continue to question 5.  If no, please proceed to question 4.

4. **Only if you answered "NO" to question 3, assess the percentage of negligence attributed to Plaintiff Thomas Harvey and Defendant the Kroger Co.**

   Plaintiff Thomas Harvey:            _____ percent
   Defendant the Kroger Co:            _____ percent

   If you find that Plaintiff Thomas Harvey's negligence to be 50% or more, and after you enter that percentage in the space above, this concludes your deliberations.  Please sign below.

If you find Plaintiff Thomas Harvey's negligence to be less than 50%, and after you enter that percentage in the space above, continue to question 5.

**5. Plaintiff Thomas Harvey is entitled to $ _____ in damages.**

This _____ day of _____, 2022.

_____
Foreperson